b

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

RANDOLPH JOSEPH,                    CIVIL DOCKET NO. 1:22-CV-03198
Plaintiff

VERSUS                             CHIEF DISTRICT JUDGE DOUGHTY

SCOTT FRANKLIN, ET AL.,
Defendants                         MAGISTRATE JUDGE PEREZ-MONTES

## REPORT AND RECOMMENDATION

Before the Court are three Motions to Dismiss filed by: (1) Defendants Scott Franklin, LaSalle Correctional Center, LL.C., and LaSalle Corrections, L.L.C. (ECF No. 3); (2) Defendant Warden John Stuckey (ECF No. 18); and (3) Defendant LaSalle Management Co., L.L.C. (ECF No. 27).[1]

Because Plaintiff Randolph Joseph ("Joseph") asserts that the administrative remedies at LaSalle Correctional Center were not available to him, Defendants' Motions to Dismiss (ECF Nos. 3, 18, 27) should be DENIED IN PART on the § 1983 issue of exhaustion of administrative remedies.

Because there is no supervisory liability under § 1983, Defendants' Motions to Dismiss (ECF Nos. 3, 18, 27) should be GRANTED IN PART as to Joseph's §

---

[1] The parties attached some extrinsic evidence to their Motions to Dismiss (ECF Nos. 3, 18, 27). That evidence should be excluded and the three Motions to Dismiss should be considered pursuant to Rule 12(b).

1983 claims for supervisory liability and those claims should be DISMISSED WITH PREJUDICE.

Because Joseph states § 1983 *Monell* claims for use of excessive force and denial of medical care against Sheriff Franklin in his official capacity, LaSalle Corrections, L.L.C., LaSalle Correctional Center, L.L.C., LaSalle Management, L.L.C., and Warden Stuckey in his official capacity, Defendants' Motions to Dismiss (ECF Nos. 3, 18, 27) should be DENIED IN PART as to those claims.

Because Joseph fails to state § 1983 *Monell* claims for failure to train or supervise against Sheriff Franklin in his official capacity, LaSalle Corrections, L.L.C., LaSalle Correctional Center, L.L.C., LaSalle Management, L.L.C., and Warden Stuckey in his official capacity, Defendants' Motions to Dismiss (ECF Nos. 3, 18, 27) should be GRANTED IN PART and those claims should be DISMISSED WITHOUT PREJUDICE.

And because Joseph fails to state § 1983 claims for failure to train or supervise against Sheriff Franklin and Warden Stuckey in their individual capacities, Defendants' Motions to Dismiss (ECF Nos. 3, 17) should be GRANTED IN PART and those claims should be DISMISSED WITHOUT PREJUDICE.

I.    Background

Plaintiff Randolph Joseph ("Joseph") filed original and supplemental Complaints pursuant to 42 U.S.C. § 1983 and state law, asserting federal question jurisdiction and supplemental jurisdiction.  ECF No. 1, 7.  The named Defendants

2

are: Scott Franklin ("Franklin") (LaSalle Parish Sheriff, sued in his individual and official capacities); LaSalle Correctional Center ("LCC") (a private correctional facility in Olla, Louisiana); LaSalle Corrections, L.L.C. (a manager and operator of LaSalle Correctional Center, L.L.C.); LaSalle Management Company, L.L.C. ("LMC") (responsible for operations and employees at LaSalle Correctional Center, L.L.C.); Warden Jeff Windham ("Windham") (Warden of LCC, sued in both his individual and official capacities); Warden John Stuckey ("Stuckey") (warden of LCC)[2]; and seven deputies employed at LCC (sued in their official capacities only)– Deputy Parker Magee ("Magee"), Deputy Brandon Tarver ("Tarver"), Deputy Griffin Peppers ("Peppers"), Deputy Steven Bergeron ("Bergeron"), Deputy Evonda Masters ("Masters"), Deputy David Moreau ("Moreau"), and Deputy Charles Douglas ("Douglas").

Joseph contends that, while he was confined in LCC on August 23, 2021, he was involved in an altercation with another inmate. ECF No. 1 at 3. LCC deputies removed Joseph from the altercation, restrained his hands and feet, and used excessive force on him. ECF No. 1 at 4. As a result, Joseph suffered a broken jaw. ECF No. 1 at 4. Joseph was scheduled for surgical repair of his jaw. On August 26,

---

[2] Joseph does not state whether he is suing Warden Stuckey in his official or individual capacity. ECF No. 7 at 2. Usually, an official capacity claim cannot be against a warden of a Louisiana parish jail because the warden is not an official policymaker. S*ee Guillot on behalf of T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023). However, in at least one case, the United States Fifth Circuit Court of Appeals has found that a warden employed by LaSalle Management Company, L.L.C. is a final policymaker for his prison. *See Moore v. LaSalle Management Company, L.L.C.*, 41 F.4th 493, 499 (5th Cir. 2022). Therefore, the Court will consider the claims against Warden Stuckey in both is individual and official capacities.

3

Deputy Magee restrained Joseph for transport to the medical facility; used excessive force on him by spraying him with an unknown substance; and hit Joseph repeatedly in his broken jaw, head, face, and elsewhere with the spray can. ECF No. 1 at 5. During Joseph's surgery, his jaw was wired shut. ECF NO. 1 at 5. Joseph requested a segmented cell for recovery, but he was placed in general population. ECF NO. 1 at 5.

On August 30, Joseph requested his medically recommended liquid food (Ensure) and was beaten by Deputy Tarver, Deputy Douglas, and Deputy Moreau. ECF No. 1 at 6. Joseph's jaw was re-injured but he received no medical attention, and was placed in a small cell with four other inmates before he was removed to general population again. ECF NO. 1 at 6.

On September 11, 2021, Joseph was again involved in an altercation with another inmate during which he was stabbed and splashed with hot water. ECF No. 1 at 7. Joseph was denied medical care. Later the same day, Joseph was stabbed again by another inmate. ECF No. 1 at 7. Again, Joseph was denied medical care (by Deputy Tarver). ECF No. 1 at 7. However, during a shift changed, Joseph was examined by a nurse, then placed back in general population. ECF No. 1 at 7-8.

Joseph also contends he requested administrative remedy procedure ("ARP") forms so he could file grievances concerning the use of excessive force on August 23 and August 26, but he was not given forms. ECF No. 7 at 3. The only way for an

4

inmate to get an ARP form was to request one from LaSalle Corrections, L.L.C. and/or a LaSalle Correctional Center deputy and/or employee.  ECF NO. 7 at 3-4.

Joseph asserts § 1983 and state law claims against Sheriff Franklin, Warden Windham, Warden Stuckey, LaSalle Correctional Center, L.L.C., LaSalle Corrections, L.L.C., and LaSalle Management, L.L.C. for negligence, failure to protect, failure to train, and failure to supervise.  Joseph asserts § 1983 claims against the deputies for use of excessive force and denial of medical care.  Joseph seeks monetary damages, attorney's fees, and costs.

Defendants Franklin, LaSalle Correctional Center, and LaSalle Corrections filed a Motion to Dismiss asserting that Joseph has failed to state a claim and failed to exhaust his administrative remedies.  ECF Nos. 3, 5.  Joseph opposes that Motion.  ECF No. 8.

Defendant John Stuckey filed a Motion to Dismiss for failure to state a claim.  ECF No. 18.  Joseph opposes that Motion.  ECF no. 22.

Defendant LaSalle Management filed a Motion to Dismiss for failure to state a claim and failure to exhaust administrative remedies.  ECF No. 26.  Joseph opposes that Motion.  ECF No. 29.

## II.    Law and Analysis

### A.    Motion to Dismiss

A court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6).  "[A] complaint will survive

dismissal for failure to state a claim if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016), cert. den., 137 S. Ct. 489 (U.S. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The court must view all well-pleaded facts in the light most favorable to the plaintiff. *See Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016).  "'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Inclusive Communities Project, Inc. v. Lincoln Property Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (citing *Iqbal*, 556 U.S. at 679).

**B.**    **Defendants' Motion to Dismiss for lack of exhaustion should be denied.**

Defendants Franklin, LaSalle Correctional Center, L.L.C., and LaSalle Corrections, L.L.C. raise the defense that Joseph failed to exhaust his administrative remedies.  Defendants attached an affidavit to their motion.  ECF No. 3-2.  Defendants Stuckey and LaSalle Management Co., L.L.C. each incorporated that argument and evidence by reference into their Motions to Dismiss.  ECF No. 18 at 8; No. 27 at 10.  Joseph attached an affidavit and extrinsic evidence to his response.  ECF Nos. 8-1, 8-2.

1. <u>**The parties' extrinsic evidence is excluded on the Motions to Dismiss.**</u>

In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to: (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Communities Project, Inc.*, 920 F.3d at 900 (citing *Murray v. LeBlanc*, 629 F. Supp. 3d 437, 454-55 (M.D. La. 2022)) .

When a party submits evidence with a motion to dismiss that goes beyond the facts alleged in the parties' pleadings, the Court  may either exclude the evidence or treat the motion as one for summary judgment.[3]  See Fed. R. Civ. P. 12(d); *Dillon v. Rogers*, 596 F.3d 260, 271 (5th Cir. 2010) (affirming district court's conversion of defendants' motion to dismiss for failure to exhaust administrative remedies, to which they attached affidavits and records in support of the factual claims in their

---

[3] "[A] prisoner's failure to exhaust administrative remedies does not deprive courts of subject matter jurisdiction in suits covered by the PLRA." *Dillon v. Rogers*, 596 F.3d 260, 271 (5th Cir. 2010) (citing *Woodford v. Ngo*, 548 U.S. 81, 101 (2006)). "[F]ailure to exhaust is an affirmative defense under the PLRA." *Jones v. Bock*, 549 U.S. 199, 216 (2007).

"When the defendant raises exhaustion as an affirmative defense, the judge should usually resolve disputes concerning exhaustion prior to allowing the case to proceed to the merits. If the plaintiff survives summary judgment on exhaustion, the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary. Then, if the judge determines that the plaintiff has exhausted administrative remedies or that his or her failure to exhaust should be excused, the case may proceed to the merits." *Dillon*, 596 F.3d at 273.  "In many cases, the judge will be able to rule on exhaustion without allowing any discovery. However, in some cases, unique circumstances may arise that necessitate allowing some discovery prior to ruling, such as where the availability of administrative remedies is contested." *Dillon*, 596 F.3d at 273 n. 4.

motion, to a motion for summary judgment, and plaintiff responded in kind); *see also Thoele v. Collier,* 2022 WL 703189, at *1-*2 (5th Cir. 2022).

Defendants' affirmative defense of lack of exhaustion (ECF No. 3) should be raised in a motion for summary judgment.  Although both sides of this dispute have attached some evidence extrinsic to the pleadings on the issue of exhaustion, it is by no means a full and complete motion for summary judgment on the issue. Therefore, the Court will disregard the extrinsic evidence and decide the issue as it was raised, in a motion to dismiss.

### 2.    The administrative remedies at LaSalle Correctional Center were not available to Joseph.

Defendants raise the affirmative defense of lack of exhaustion.  Defendants contend that, by his own admission in his Complaint, Joseph failed to exhaust his administrative remedies.

The PLRA's exhaustion requirement is no-nonsense.  Inmates seeking to challenge prison conditions must exhaust 'such administrative remedies as are available' before challenging prison conditions in court."  *Valentine v. Collier,* 978 F.3d 154, 160 (5th Cir. 2020).  "The provision is mandatory, and courts have zero discretion to hear unexhausted claims."  *Valentine,* 978 F.3d at 160 (citing *Jones,* 549 U.S. at 211).  "[T]here is no 'special circumstances' exception."  *Valentine,* 978 F.3d at 160 (citing *Ross v. Blake,* 578 U.S. 632, 648 (2016)).

However, "the PLRA does contain one textual exception to its otherwise stringent exhaustion requirement: availability. Inmates who fail to exhaust can proceed in court by showing that administrative remedies were not 'available.' As used in the PLRA, 'available' means 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). "This is a fact-specific inquiry." *Id.* "For example, a grievance process is not available if 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates,' if it is 'so opaque that it becomes, practically speaking, incapable of use,' or if prison administrators prevent access to it 'through machination, misrepresentation, or intimidation.'" *Id.* "If the institutional authorities refuse to provide a prisoner with the forms needed to exhaust administrative remedies, then those remedies are not 'available' to the prisoner." *Aceves v. Swanson*, 75 Fed. Appx. 295, 296 (5th Cir .2003).

Joseph contends that the only way to obtain a grievance form was to request one from a deputy or employee. ECF No. 1, ¶ 15C. Joseph asserts that, after his jaw surgery, he requested an administrative remedy form "on no less than 3 occasions" from "various LaSalle Corrections, L.L.C. and or LaSalle Correctional Center, L.L.C. deputies and/or employees" so he could file grievances, but he was

never given one.  ECF No. 7, ¶¶ 15A, 15B.  Instead, he was told: "Get out of here," and asked: "What do you need a form for"?  ECF No. 7, ¶ 15B.

Viewing the allegations in Joseph's Complaints in the light most favorable to him. Joseph has sufficiently alleged that the grievance procedures at LaSalle Correctional Center were rendered unavailable to him because the prison officials refused to provide him with the necessary forms.  Therefore, Defendants' Motions to Dismiss (ECF Nos. 3, 17, 28) on the issue of exhaustion should be denied.[4]

C.    **The Defendants' Motions to Dismiss should be granted in part and denied in part.**

Defendants Sheriff Franklin, LaSalle Correctional Center, LaSalle Corrections, LaSalle Management Co., and Warden Stuckey contest Joseph's § 1983 claims against each of them in their official capacities, and against Sheriff Franklin and Warden Stuckey in their individual capacities.  ECF No. 3.  Defendants do not contest Joseph's state law claims.

Section 1983 prescribes redress for conduct by any person who, under color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States.  *See* 42 U.S.C. § 1983.

This is not a typical § 1983 case against state actors whose legal obligations and liabilities are set forth in the law.  Instead, this is a case where the

---

[4] It is also noted that Joseph had a severe physical injury which required surgical repair.  It is not yet shown in the record whether the consequences of Joseph's injury precluded him from filing a timely grievance.

responsibility for housing and caring for prisoners has been contracted out to a private corrections company that appears to be comprised of several limited liability companies with some common ownership.[5] Those contracts, presumably with the Sheriff or LaSalle Parish or both, are not part of the record.

Neither the Joseph nor the Court is clear about the roles of each Defendant company and the Sheriff, or even about who employs and pays the "deputies" working at the LaSalle Correctional Center. Defendants have not admitted anything, but have argued that Joseph has failed to "show" that each Defendant is actually responsible and liable for the alleged violations of his constitutional rights.

However, on a motion to dismiss, the Court presumes the factual allegations as to the Defendants' roles are correct. Defendants have not claimed otherwise. Defendants' arguments that Joseph has not "proven" who is responsible or liable are more appropriately made on a Motion for Summary Judgment.

---

[5] The numerous LaSalle companies deal with different aspects of the corrections business and appear to be related to one another. While neither Joseph nor the Court has determined precisely what each company named in this lawsuit is responsible for, that factor alone is insufficient to merit dismissal from this suit. Discovery will reveal that information. It is sufficient to note that the records from the Louisiana Secretary of State indicate the limited liability companies named as defendants herein are related and may be liable as part of a single business enterprise. *See Brown v. ANA Insurance Group,* 2007-C-2116 (La. 10/14/08), 994 So. 2d 1265, 1266, n. 2 (citing *Green v. Championship Ins. Co.,* 577 So. 2d 249, 257-58 (La. 1st Cir. 1991), *writ den.,* 580 So.2d 668 (La. 1991)); *see also Rowland v. Southwestern Correctional, L.L.C.,* 2021 WL 4206409, at *1 (E.D. Tex. 2021), *report and recommendation adopted,* 2021 WL 4191433 (E.D. Tex. 2021) (the court noted that, in defendants' motion to dismiss: Southwestern Correctional, L.L.C. named itself as "Southwestern Correctional, L.L.C., d/b/a LaSalle Corrections, L.L.C., d/b/a LaSalle Southwest Corrections"; and LaSalle Management named itself as "LaSalle Management Company, L.L.C.").

1.    <u>There is no supervisory liability under § 1983.</u>

Joseph contends the LaSalle Defendants, Sheriff Franklin, Warden Windham, and Warden Stuckey are liable for the actions of their employees, and therefore are liable for the injuries caused by the individual correctional officers/deputies who used excessive force against him and denied him medical care. Joseph brings this claim under § 1983, as well as state law.

The doctrine of *respondeat superior*–which makes an employer or supervisor liable for an employee's alleged tort–is unavailable in suits under 42 U.S.C. § 1983. *See Thompkins v. Belt,* 828 F.2d 298, 303 (5th Cir. 1987); *see also Parker v. LeBlanc,* 2023 WL 4558517, at *3 (5th Cir. 2023); *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018). Supervisory officials cannot be held vicariously liable for their subordinates' actions. Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that cause plaintiff's injury. *See Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992), cert. den., 508 U.S. 951 (1993); *Thompkins*, 828 F.2d at 303. Government entities also may not be held liable on a *respondeat superior* basis. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (199).

This Court has previously found that supervisory liability does not attach to private prison corporations such as the LaSalle companies. *See Coleman v. LaSalle Correctional Center*, 2008 WL 2465989, at *5 (W.D. La. 2008). However, last year,

in *Moore,* the United States Court of Appeals for the Fifth Circuit stated it has never decided the issue of whether private defendants may be held vicariously liable under § 1983, but found the issue was not properly before them in that case. *See Moore v. LaSalle Management Company, L.L.C.*, 41 F.4th 493, 509 (5th Cir. 2022). Therefore, it will be addressed now.

In *Monell*, the United States Supreme Court reasoned:

[Section 1983] plainly imposes liability on a government that, under color of some official policy, "causes" an employee to violate another's constitutional rights. At the same time, that language cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor. Indeed, the fact that Congress did specifically provide that A's tort became B's liability if B "caused" A to subject another to a tort suggests that Congress did not intend § 1983 liability to attach where such causation was absent. See *Rizzo v. Goode,* 423 U.S. 362, 370–371, 96 S. Ct. 598, 602, 46 L.Ed.2d 561 (1976).

Equally important, creation of a federal law of *respondeat superior* would have raised all the constitutional problems associated with the obligation to keep the peace, an obligation Congress chose not to impose because it thought imposition of such an obligation unconstitutional. To this day, there is disagreement about the basis for imposing liability on an employer for the torts of an employee when the sole nexus between the employer and the tort is the fact of the employer-employee relationship. See W. Prosser, Law of Torts § 69, p. 459 (4th ed. 1971). Nonetheless, two justifications tend to stand out. First is the common-sense notion that no matter how blameless an employer appears to be in an individual case, accidents might nonetheless be reduced if employers had to bear the cost of accidents. See, *e. g., ibid.;* 2 F. Harper & F. James, Law of Torts, § 26.3, pp. 1368–1369 (1956). Second is the argument that the cost of accidents should be spread to the community as a whole on an insurance theory. See, *e. g., id.,* § 26.5; Prosser, *supra,* at 459.

The first justification is of the same sort that was offered for statutes like the Sherman amendment: "The obligation to make compensation for injury resulting from riot is, by arbitrary enactment of statutes, affirmatory law, and the reason of passing the statute is to secure a more perfect police regulation." Globe 777 (Sen. Frelinghuysen). This justification was obviously insufficient to sustain the amendment against perceived constitutional difficulties and there is no reason to suppose that a more general liability imposed for a similar reason would have been thought less constitutionally objectionable. The second justification was similarly put forward as a justification for the Sherman amendment: "we do not look upon [the Sherman amendment] as a punishment . . . . It is a mutual insurance." *Id.,* at 792 (Rep. Butler). Again, this justification was insufficient to sustain the amendment.

We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 692–94.[6]

---

[6] The Sherman Amendment was a proposed amendment to the Civil Rights Act of 1871, 17 Stat. 13, the precursor of § 1983. *See Monell,* 436 U.S. at 664. "The Sherman Amendment sought to impose civil liability on municipalities for damage done to the person or property of its inhabitants by private persons 'riotously and tumultuously assembled.' Cong. Glove, 42d Cong., 1st Sess., 749 (1871)." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 n.7 (1986).

"Opponents of the amendment argued that, in effect, it imposed an obligation on local governments to keep the peace, and that the Federal Government could not constitutionally require local governments to keep the peace if state law did not. This argument succeeded in blocking passage of the amendment. However, even the opponents of the Sherman amendment recognized Congress' power to impose civil liability on a local government already obligated to keep the peace by state law if that government failed to do so and thereby violated the Fourteenth Amendment." *Pembaur*, 475 U.S. at 479 (citing *Monell*, 436 U.S. at 665-83).

14

In *Pembaur v. City of Cincinnati,* the Supreme Court explained its decision in

*Monell*:

> Primarily, . . . our conclusion rested upon the legislative history, which disclosed that, while Congress never questioned its power to impose civil liability on municipalities for their *own* illegal acts, Congress did doubt its constitutional power to impose such liability in order to oblige municipalities to control the conduct of *others. Id.,* at 665–683, 98 S. Ct. at 2022–2032. We found that, because of these doubts, Congress chose not to create such obligations in § 1983. Recognizing that this would be the effect of a federal law of *respondeat superior,* we concluded that § 1983 could not be interpreted to incorporate doctrines of vicarious liability. *Id.,* at 692–694, and n. 57, 98 S. Ct. at 2036–2037, and n. 57.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 478–79 (1986); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("Reading the statute's language in the light of its legislative history, the [*Monell*] Court found that vicarious liability would be incompatible with the causation requirement set out on the face of § 1983."); *Alexander v. Southern Health Partners, Inc.,* 2023 WL 3961704, at *7 n. 62 (5th Cir. 2023) ("[N]o entity–private or otherwise–is subject to *respondeat-superior* liability under § 1983."); *Cherry Knoll, L.L.C. v. Jones,* 922 F.3d 309, 317 n.11 (5th Cir. 2019); *Valle v. City of Houston,* 613 F.3d 536, 541 (5th Cir. 2010), cert. den., 563 U.S. 935 (2011).

Because the United States Supreme Court has unambiguously stated that § 1983 cannot incorporate a doctrine of vicarious liability, and Fifth Circuit case law has followed that holding, vicarious liability cannot be imposed on private entities under § 1983.

15

Therefore, Defendants' Motions to Dismiss (ECF Nos. 3, 18, 27) Joseph's § 1983 claims for supervisory liability should be granted and those claims should be dismissed.[7]

### 2. Joseph alleges *Monell* claims for use of excessive force and denial of medical care against LaSalle Corrections, LaSalle Correctional Center, LaSalle Management, Sheriff Franklin in his official capacity, and Warden Stuckey in his official capacity.

Sheriff Franklin, LaSalle Corrections, LaSalle Correctional Center, LaSalle Management, and Warden Stuckey contend Joseph failed to state a § 1983 claim against them, pursuant to *Monell*, 436 U.S. at 694, for a policy of custom authorizing the use of excessive force or the denial of medical care. ECF Nos. 3, 27.

### 3. Sheriff Franklin is a policymaker for LaSalle Parish.

First it is noted that Defendants contend, incorrectly, that liability on the part of Sheriff Franklin in his official capacity flows back to LaSalle Parish.

"The Louisiana Constitution created the office of sheriff to exist and function independently of the parish's governing authority." *Dugas v. City of Ville Platte*, 2017 WL 4238770, at *3 (W.D. La. 2017), *report and recommendation adopted,* 2017 WL 4228693 (W.D. La. 2017) (citing La. Const. Art. 5, § 27). Under Louisiana law, a sheriff is a "virtually autonomous local government official," who "occupies a constitutional office which exists and functions independently of the governing body of the parish." *Dugas*, 2017 WL 4238770, at *3 (citing *Burge v. Parish of St.*

---

[7] Defendants did not include Joseph's state law claims for supervisory liability in their Motions to Dismiss.

16

*Tammany*, 187 F.3d 452, 469 (5th Cir. 1999); *Broussard v. Boudoin,* 2004 WL 223984, at \*1 (E.D. La. 2004)).

The sheriff is a final policymaker for his parish. *See Guillot on behalf of T.A.G. v. Russell,* 59 F.4th 743, 751 (5th Cir. 2023); *Craig v. St. Martin Parish Sheriff,* 861 F. Supp. 1290, 1300 (W.D. La. 1994) (citing La. Const. Art. 5, § 27, "[The sheriff] shall be the chief law enforcement officer in the parish."); *see also McNeese v. State of Louisiana,* 2006 WL 1751055 (W.D. La. 2006). The Sheriff is the "keeper of the public jail of his parish." La. R.S. 15:704; La. R.S. 13:5539(C); *Howard v. Fortenberry,* 723 F.2d 1206, 1210 n.9 (5th Cir.), *vacated in part on other grounds,* 728 F.2d 712 (5th Cir. 1984). A parish government has no authority over a parish sheriff or, by extension, his deputies. *See Broussard,* 2004 WL 223984, at \*1 (citing *Foster v. Hampton,* 352 So.2d 197, 203 (La.1977)).

"[A]ny judgment against a sheriff in his official capacity must be recovered from his liability insurer or the public funds controlled by him or his successor in office." *Burge,* 187 F.3d at 466 (citing *Jenkins v. Jefferson Parish Sheriff's Office,* 402 So.2d 669, 671 (La. 1981)). Under Louisiana law, the Sheriff's funds are held by him through his Law Enforcement District.[8] *See* La. R.S. 13:5901 (creating a law enforcement district in each parish "for the purpose of providing financing to the

---

[8] La. R.S. 33:5901, et seq., create a law enforcement district in each parish "for the purpose of providing financing to the office of sheriff for that parish." "[T] duly elected sheriff of the parish . . ., shall be ex officio the chief executive officer of the [law enforcement] district." La. R.S. 13:5901.

office of sheriff for that parish."   "[T] duly elected sheriff of the parish . . ., shall be *ex officio* the chief executive officer of the [law enforcement] district." ).

### 4.    Warden Stuckey is a policymaker for the LaSalle Defendants.

If the LaSalle Correctional Center were operated by Sheriff Franklin, he would employ the warden.  However, this case does not involve a "public jail," such as would be operated by the Sheriff.  Instead, LaSalle Correctional Center is a privately operated jail.  The parties have not yet stated who employs, supervises, and pays Warden Stuckey.

In a case involving another prison privately-operated by LaSalle Management Company, the United States Fifth Circuit Court of Appeals found that LaSalle Management hired the warden, and the warden set the policy for the prison.  *See Moore,* 41 F.4th at 499.  Therefore, for purposes of these Motions to Dismiss, the Court will treat Warden Stuckey as a final policymaker for one or more of the LaSalle Defendants in this case.

### 5.    Joseph alleges § 1983 *Monell* claims against Defendants for use of excessive force and denial of medical care.

Joseph asserts *Monell* claims under § 1983 against Defendants for use of excessive force and denial of medical care.

In *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 689 (1978), the United States Supreme Court held that municipalities and other local governmental bodies are "persons" within the meaning of § 1983,  In *Rosborough v.*

18

*Management & Training Corp.,* 350 F.3d 459, 461 (5th Cir. 2003), the Fifth Circuit extended municipal corporate liability under § 1983 to include private prison-management corporations and their employees. "The test to determine liability for a private prison-management corporation under § 1983 is more or less identical to the test employed to determine municipal or local government liability." *Coleman v. LaSalle Correctional Center*, 2008 WL 2465989, at *4–5 (W.D. La. 2008) (citing *Phillips v. Corrections Corp. of America,* 2006 WL 1308142 at *3 (W.D. La. 2006)); *see also Monell,* 436 U.S. at 694.

"To succeed on a *Monell* claim, plaintiffs 'must show (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)'." *Austin v. City of Pasadena, Texas,* 2023 WL 4569562, at *12 (5th Cir. 2023) (citing *Newbury v. City of Windcrest*, 991 F.3d 672, 680 (5th Cir. 2021)). "[T]he critical question is to decide who is the final policymaker, which is an issue of state law." *See Advanced Technology Building Solutions, L.L.C. v. City of Jackson, Miss.*, 817 F.3d 163, 166 (5th Cir. 2016), *cert. den.*, 137 S. Ct. 297 (U.S. 2016) (citing *Jett v. Dallas Independent School District,* 7 F.3d 1241, 1245 (5th Cir. 1993)).

"The first element, the existence of a policy or custom, is satisfied if a practice is 'so persistent and widespread as to practically have the force of law'." *Austin,* 2023 WL 4569562, at *13 (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "Allegations of an isolated incident are not sufficient to show the existence of a

custom or policy." *Austin,* 2023 WL 4569562, at *13 (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992), *cert. den.*, 506 U.S. 973 (1992)). "What must be shown is 'that the policy itself violated federal law or authorized or directed the deprivation of federal rights.'" *Austin,* 2023 WL 4569562, at *12 (citing *Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004)).

"[A] municipality may be liable for failing to adopt policies." *Austin,* 2023 WL 4569562, at *12 (citing *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992), and *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)). "While the municipal policy-maker's failure to adopt a precaution can be the basis for § 1983 liability, such omission must amount to an intentional choice, not merely an unintentionally negligent oversight." *Id.*

"[M]unicipal failure to adopt a policy does not constitute such an intentional choice unless it can be said to have been deliberately indifferent." *Id.* "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 62 (citing *Board of Commissioners of Bryan County v. Brown,* 520 U.S. 397, 410 (1997)). "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Austin,* 2023 WL 4569562, at *12 (citing *Rhyne*, 973 F.2d at 392, and *City of Canton*, 489 U.S. at 387).

For a Motion to Dismiss, Joseph need only *allege* sufficient facts to support his claims. Joseph alleges two policies, or customs, that resulted in the violations of his constitutional rights by LaSalle Management: (1) tacit authorization of the use of excessive force; and (2) tacit authorization of the denial of medical care to inmates. ECF No. 7. Joseph contends a pattern is alleged because excessive force was used against him twice when he was in restraints, on August 23 and August 26. ECF No. 1. Joseph further contends he was denied medical care for injuries three times–once on August 30 and twice on September 11 (after each stabbing occurred). ECF No. 1. Joseph also asserts that the Defendants "engaged in and permitted to exist a pattern, practice, or custom of unconstitutional conduct toward inmates, including, but not limited, to, use of force when an inmate was restrained and rendered virtually helpless, or nonthreatening, use of force when an inmate was already injured and in need of medical care, and/or denial of medical care." ECF No. 3. Joseph contends the fact that each violation occurred more than once shows a pattern.

Joseph also alleges a pattern of similar constitutional violations at another LaSalle facility. ECF No. 3 at ¶ 12. *See Sabbie v. Southwestern Correctional, L.L.C.*, 2017 WL 5907865 (E.D. Tex. 2017), *report and recommendation adopted,* 2017 WL 5905270 (E.D. Tex. 2017). Case law involving the LaSalle Defendants has made clear to them what constitutes excessive force and unconstitutional denial of medical care, and what their policies and customs should be. *See Mathis v.*

21

*Southwestern Correctional, L.L.C.*, 2021 WL 4129123 (E.D. Tex. 2021) (denial of medical care); *Moore,* 41 F.4th 493 (use of excessive force and denial of medical care)[9]; *Sabbie, supra.*[10]

Joseph contends the policies, practices and/or custom at LaSalle Correctional Center were the moving force behind those constitutional violations, and that those management practices are widespread amongst LaSalle facilities.[11]

Joseph alleges specific facts concerning three instances when excessive force was used against him and three instances when he was denied medical care, as well as similar past practices demonstrated in other cases. Accepting Joseph's allegations as true for purposes of this motion, he has adequately alleged a practice

---

[9] "[W]hen a prison inmate engages in willful misconduct, a prison guard may use reasonable force to restrain him—but after the inmate submits, there is no need, and thus no justification, for the further use of force." *Aucoin v. Cupil*, 958 F.3d 379, 380 (5th Cir. 2020), *cert. den.*, 141 S. Ct. 567 (U.S. 2020). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Alvarez v. Akwitti*, 997 F.3d 211, 213 (5th Cir. 2021) (quoting *Farmer v. Brennan,* 511 U.S. 825, 832 (1994)).

[10] In cases where courts have found the existence of a municipal custom, the plaintiffs have specifically pleaded incidents of constitutional infringement or alleged facts regarding not just themselves, but others, to indicate that other violations may have occurred. *Venzor v. Collin County, Texas,* 2022 WL 666989, at *6 (E.D. Tex. 2022), *report and recommendation adopted*, 2022 WL 656828 (E.D. Tex. 2022) (citing *Feliz v. El Paso County*, 441 F. Supp. 3d 488, 503 (W.D. Tex. 2020); *Mathis*, 2021 WL 5088276, at *40; *Carrillo v. Buendia*, 2020 WL 4584380, at *19 (S.D. Tex. 2020)).

[11] Defendants attempt to distinguish *Sabbie* by pointing out that the facts of that case occurred 7 years prior to this case, in a different facility that was "ultimately responsible to different political subdivisions." The political subdivisions involved are irrelevant to the nation-wide applicability of the constitutional standards at issue. And some of the same Defendants involved in that case—LaSalle Corrections, L.L.C. and LaSalle Management Co., L.L.C.– are involved in this case, also.

that fairly represents the policies of LaSalle Corrections, LaSalle Correctional Center, LaSalle Management, Sheriff Franklin in his official capacity, and Warden Stuckey in his official capacity, for use of excessive force and denial of medical care, as well as alleged that those customs or policies were the moving force behind the violations of his constitutional rights. *See McWilliams v. City of Houston*, 2022 WL 17337820, at *6 (5th Cir. 2022) (citing *Webb v. Town .f St. Joseph*, 925 F.3d 209, 214 (5th Cir. 2019)).

Joseph has generally alleged that each of these Defendants is a policymaker for the LaSalle Correctional Center. The identity of a legally authorized policymaker for purposes of *Monell* is a question of law. *See Groden v. City of Dallas, Texas*, 826 F.3d 280, 282 (5th Cir. 2016); *see also, Pembaur*, 475 U.S. at 483; *Carrillo v. Buendia*, 2020 WL 4584380, at *19 (S.D. Tex. 2020). It "need not be pled in the complaint to survive a motion to dismiss." *Balle v. Nueces County, Texas*, 952 F.3d 552, 559 (5th Cir. 2017); *Groden*, 826 F.3d at 282 ("[F]or purposes of Rule 12(b)(6), we hold that a plaintiff is not required to single out the specific policymaker in his complaint; instead, a plaintiff need only plead *facts* that show that the defendant or defendants acted pursuant to a specific official policy, which was promulgated or ratified by the *legally* authorized policymaker."); *Carrillo*, 2020 WL 4584380, at *19. "Therefore, if the factual allegations are sufficient to support the claim, the failure to specify a policymaker is not a basis for granting a Rule 12

motion to dismiss." *Carrillo*, 2020 WL 4584380, at \*19; *see also Balle*, 952 F.3d at 559; *Groden*, 826 F.3d at 282.

Louisiana law places responsibility for operating the parish jail on Sheriff Franklin. However, in this case there is a private correctional company–one or more of the LaSalle Defendants–taking on some or all of that responsibility. The contract for the private company to operate the jail and manage its inmates will clarify how those responsibilities and liabilities have been divided. *See Moore*, 41 F.4th at 499; *Sanchez v. Oliver*, 995 F.3d 461, 472 (5th Cir. 2021). But for purposes of Defendants' Motions to Dismiss, it is enough that Joseph has *alleged* claims against each of them under *Monell*.

Therefore, Defendants' Motions to Dismiss (ECF Nos. 3, 18, 27) should be denied as to Sheriff Franklin in his official capacity, Warden Stuckey in his official capacity, LaSalle Corrections, L.L.C., LaSalle Correctional Center, L.L.C., and LaSalle Management, L.L.C. on the issue of § 1983 *Monell* liability for use of excessive force and denial of medical care.

### 6. Joseph fails to allege a § 1983 *Monell* claim for failure to train or supervise against Defendants.

Next, Defendants contend that Joseph failed to allege sufficient facts to support a claim that they have a custom or policy of failing to adequately train LaSalle Correctional Center employees in the use of force and the provision of medical care to inmates.

24

"[A] municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Connick*, 563 U.S. at 61 (citing *City of Canton, Ohio,* 489 U.S. at 388). "Only then 'can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.'" *Id.* "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 62 (citing *Board of Commissioners of Bryan County,* 520 U.S. at 410). "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* "The city's 'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution.'" *Connick*, 563 U.S. at 62 (citing *Canton,* 489 U.S., at 395).

"The infringement of the plaintiff's constitutional rights must be an 'obvious' and 'highly predictable' consequence of the failure to train." *Parker v. Blackwell,* 23 F.4th 517, 525 (5th Cir. 2022) (citing *Culbertson v. Lykos*, 790 F.3d 608, 625 (5th Cir. 2015)). "Additionally, relief will not typically be available absent a showing of a pattern of constitutional violations, as opposed to a single incident." *Parker,* 23 F.4th at 525 (citing *Cozzo v. Tangipahoa Parish Council-President Government,* 279

F.3d 273, 286 (5th Cir. 2002)).  The existence of a constitutionally deficient policy cannot be inferred from a single wrongful act, where the policy relied upon is not itself unconstitutional.  *See Thompkins*, 828 F.2d at 304.

"The Supreme Court in *Canton* advanced two ways of proving deliberate indifference: (1) through proof of a pattern of violations that make the need for further training obvious to policymakers or (2) for failing to provide training when the risk of constitutional violations was or should have been obvious or highly predictable."  *Mathis*, 2021 WL 5088276, at *40 (citing *Littell v. Houston Independent School District,* 894 F.3d 616, 624 (5th Cir. 2018)).  "For liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Mathis*, 2021 WL 5088276, at *40 (citing *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992), *cert. den.,* 506 U.S. 824 (1992)).

Again, Joseph points to the use of excessive force against him on three occasions and the denial of medical care for injuries on three occasions.  Joseph also contends that case law indicates a pattern of the LaSalle defendants failing to adequately train and supervise their employees, citing *Sabbie v. Southwestern Corrections, L.L.C.,* 2017 WL 5907865 (E.D. Tex. 2017), *report and recommendation adopted,* 2017 WL 5905270 (E.D. Tex. 2017).[12]  Joseph contends that LaSalle

---

[12] *See also Mathis,* 2021 WL 4129123; *Moore,* 41 F.4th 493.

Correctional Center and LaSalle Corrections are liable for deficient training and/or supervision that resulted in his injuries.

Joseph contends the Defendants, including Sheriff Franklin, LaSalle Corrections, LaSalle Correctional Center, LaSalle Management, Warden Windham, and Warden Stuckey, "had a duty to oversee their subordinates and ensure compliance with correctional standards of care. Defendants, even if they didn't personally direct the constitutionally offensive conduct, tacitly authorized it, or otherwise failed to train or supervise their subordinates." ECF No. 3, ¶ 8. Joseph further contends the Defendants "failed to adequately train their personnel on the use of force when an inmate was restrained and rendered virtually helpless, or nonthreatening, use of force when an inmate was already injured and in need of medical care, and denial of medical care. Their failure to train their personnel on recognizing and responding to the rights of such individuals to be free from excessive force, and or the need to medical care, was foreseeably likely to cause harm." ECF No. 3 at ¶¶ 9, 10. "The policies, practices, and/or customs described herein were the moving force behind Joseph's suffering and injuries, and the constitutional violations alleged herein." ECF No. 3 at ¶ 11.

Joseph has not described any specific policy or custom for training or supervision, or alleged a specific deficiency in the programs for training and supervision of inmates, that Sheriff Franklin, the LaSalle Defendants, or Warden Stuckey are responsible for and that is causally related to his injuries. "The

description of a policy or a custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997).

Therefore, Joseph fails to state a § 1983 claim under *Monell,* against Defendants LaSalle Management, LaSalle Corrections, LaSalle Correctional Center, Sheriff Franklin in his official capacity, and Warden Stuckey in his official capacity, for a policy of constitutionally deficient employee training or supervision. Defendants' Motions to Dismiss (ECF No. 3, 18, 27) should be granted as to Joseph's § 1983 *Monell* claim for failing to train/supervise employees.

### 7.    Joseph fails to allege § 1983 claims against Sheriff Franklin and Warden Stuckey in their individual capacities.

Joseph also names Sheriff Franklin and Warden Stuckey as defendants in their individual capacities.

Joseph asserts that Sheriff Franklin and Warden Stuckey had a duty to oversee their subordinates and ensure compliance with correctional standards of care, and that they tacitly authorized his subordinates constitutionally offense conduct or failed to train of supervise his subordinates. ECF No. 7, ¶ 8. Joseph further asserts that Sheriff Franklin and Warden Stuckey engaged in or permitted to exist a practice of custom of unconstitutional conduct toward inmates, including use of force on a restrained or nonthreatening inmates, use of force on an injured inmate, and denial of medical care. ECF No. 7, ¶ 9. Sheriff Franklin and Warden

Stuckey failed to adequately train their personnel in the use of force and in providing medical care for inmates.   ECF No. 7, ¶ 10.   Joseph asserts those unconstitutional policies, practices, or customs were the moving force behind the violations of Joseph's constitutional rights.  ECF No. 7,¶ 11.  Joseph asserts § 1983 claims, state law negligence claims, and claims for *respondeat superior* liability.

As previously stated, supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that cause plaintiff's injury.  *See Mouille*, 977 F.2d at 929; *Thompkins*, 828 F.2d at 303; *see also Thompson v. Upshur County, Texas*, 245 F.3d 447, 459 (5th Cir. 2001) (citing *Smith v. Brenoettsy,* 158 F.3d 908, 911–12 (5th Cir. 1998)).

Joseph has not alleged that either Sheriff Franklin or Warden Stuckey was personally involved in any of the incidents he complains about.   Instead, he contends Sheriff Franklin and Warden Stuckey implemented or condoned constitutionally deficient policies as to use of excessive force, denial of medical care, and training and supervision of jail employees.

However, as discussed above, Joseph has not alleged any specific deficiencies in the training program for employees at LaSalle Correctional Center that resulted in violations of his constitutional rights.  Nor has Joseph alleged a complete lack of employee training.   Therefore, Joseph has not stated a claim against Sheriff

29

Franklin or Warden Stuckey in their individual capacities for failure to train/supervise.

Therefore, Defendants' Motions to Dismiss (ECF Nos. 3, 17) should be granted in part and Joseph's § 1983 claims for failure to train/supervise against Sheriff Franklin and Warden Stuckey in their individual capacities should be dismissed.

## III.    Conclusion

Based on the foregoing, IT IS RECOMMENDED that the extrinsic evidence filed by the parties be EXCLUDED and that the three Motions to Dismiss (ECF Nos. 3, 18, 27) be considered pursuant to Rule 12(b).

IT IS RECOMMENDED that the Motions to Dismiss (ECF Nos. 3, 18, 27) for failure to exhaust administrative remedies (ECF Nos. 3, 17, 28) be DENIED.

IT IS RECOMMENDED that the Motions to Dismiss (ECF Nos. 3, 18, 27) the § 1983 claims for supervisory liability be GRANTED.

IT IS RECOMMENDED that the Motions to Dismiss (ECF Nos. 3, 18, 27) the § 1983 *Monell* claims against Sheriff Franklin in his official capacity, LaSalle Corrections, L.L.C., LaSalle Correctional Center, L.L.C., LaSalle Management, L.L.C., and Warden Stuckey in his official capacity, for use of excessive force and denial of medical care, be DENIED.

IT IS RECOMMENDED that the Motions to Dismiss (ECF Nos. 3, 18, 27) the § 1983 *Monell* claims against Sheriff Franklin in his official capacity, LaSalle

Corrections, L.L.C., LaSalle Correctional Center, L.L.C., LaSalle Management, L.L.C., and Warden Stuckey in his official capacity, for failure to train or supervise, be GRANTED and those claims be DISMISSED WITHOUT PREJUDICE.

IT IS RECOMMENDED that the Motions to Dismiss (ECF No. 3) the § 1983 claims against Sheriff Franklin and Warden Stuckey in their individual capacities, for failure to train or supervise, be GRANTED and those claims be DISMISSED WITHOUT PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings

31

or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this ___21st___ day of August 2023.

Joseph H.L. Perez-Montes
United States Magistrate Judge